No. 2--03--0151

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________
___________
_
_

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS,
 ) of Kane County.

)
 

Plaintiff-Appellee, )

) 

v. ) No.
 02--CF--1834

)

EDDIE J. BARTEE, )
 
Honorable

)
 
Grant S. Wegner,

Defendant-Appellant. ) 
Judge, Presiding
.

_______________________________________________________________________
______

JUSTICE KAPALA delivered the opinion of the court:

Defendant, Eddie J. Bartee, appeals from his conviction of unlawful possession of less than 15 grams of a controlled substance (720 ILCS 570/402(c) (West 2002)) after a jury trial in the circuit court of Kane County.  We affirm.

I.  BACKGROUND

The relevant facts elicited at trial are as follows.  On August 9, 2002, the Elgin police conducted a reverse sting in the River Landings apartment complex
.  A reverse sting consists of an undercover police officer posing as a drug dealer so that the police can apprehend purchasers of the drugs.  Detective Frank Jones of the Bellwood police department posed as the drug dealer.  Jones was positioned in the parking lot of the apartment complex, standing near parked vehicles.  Jones was video recorded by another officer who was in the surveillance team.

After approximately one-half hour of standing, Jones observed defendant riding a bicycle.  Defendant initially just rode past Jones.  Approximately 10 to 15 minutes later, defendant engaged Jones and asked him if he had seen someone named Curtis.  Jones replied that he had not.  Defendant then informed Jones that he wanted some "forties."  Jones testified that "forties" meant two rocks of cocaine for $40.  Jones replied that he had the rock cocaine.  Defendant inquired about the quality of the cocaine and Jones replied that it would "knock his socks off."  Jones then removed from his breast pocket
 one of the baggies that had been prepared by the police for sale.  Defendant informed Jones to be careful during the transaction because there were cameras around the complex.  Defendant was not happy with the one baggie given to him by Jones because it was not sufficient to constitute a "forty."  Jones then gave defendant another baggie.  Defendant then gave Jones $40 and put the baggies in his mouth.  Jones informed defendant that his name was "J" and defendant then rode off.

Jones then activated a pager which alerted the officers in the surveillance unit that a sale had occurred.  The arrest team then proceeded in their vehicle after defendant.  As the officers approached defendant, they noticed him chewing and attempting to swallow.  Defendant was apprehended and handcuffed.  The officers inspected defendant's mouth but did not find any substance.  The baggies given to defendant were never recovered.

At trial, Sergeant Jeff Adam of the Elgin police department testified that the police were running sting operations because of the drug problem on the streets.  Adam specifically testified:

"[ADAM]: [W]e analyzed our drug problem and realized that we had a very strong street level –

[Objection by defense counsel.]

***

THE COURT: Overruled.

[ADAM]: Continuing, and we realized that we had a significant street level problem.

The first part of the phase was called operation Resolve.  We targeted street level dealers.  Second part of the phase, which was Operation Resolve Part Two, was we were targeting the users of the cocaine.  What we did is we attempted to get all the street level dealers off the street; however, we still saw the demand side of it, and we decided to replace it with our own undercover officers posing as street dealers, and that's where we were at on August 9, 2002.

[ASSISTANT STATE'S ATTORNEY]: Did the first phase result in any arrests?

[ADAM]: Yes, it did.

[ASSISTANT STATE'S ATTORNEY]: And with respect to the Rivers Landing area, did any arrests occur in that area?

[ADAM]: Yes. The entire part of Operation Resolve, we had approximately 80 arrests out of it.  Out of those 80 arrests, approximately 30 to 35 of those arrests took place in the area of Clock Tower Plaza and Rivers Landing apartments, which are right next to each other."

Adam also testified that the drugs being sold by Jones were made from cocaine obtained in a previous arrest.  The drugs were taken to the crime lab to be mixed with other substances.  Adam testified that the mixing occurred so that if any of the drugs were not recovered by the police they would not be dangerous to anyone who consumed them.  After the mixture was retrieved from the lab by the officers, it was used to coat small pieces of macadamia nuts so that the substance would look like rock cocaine.  Sixteen individual baggies were made on August 9, 2002, each containing a piece of macadamia nut coated with between one-tenth to one-fourth of a gram of the mixture obtained from the lab.  On cross-examination, Adam testified that the substance received from the lab was homogenous.

Edward McGill, a forensic scientist specializing in drug chemistry, testified that he received instructions from the Elgin police department to use cocaine obtained from a previous case to prepare a mixture that contained a low percentage of cocaine.  He was also instructed to weigh the prepared sample and to do a quantitative analysis to determine the exact amount of cocaine in the new sample.  McGill performed these tasks by taking some of the cocaine given to him and adding to it Inositol powder, used in baby formula, and Mannitol powder, a dietary supplement.  This produced a powder that McGill testified contained 7.9% cocaine.  The total sample prepared by McGill weighed 77.8 grams.  He stated that out of 100 grams of the powder he prepared, 7.9 grams would be cocaine.  McGill's report was admitted into evidence
.  It stated that the substance he prepared was 77.8 grams, 7.9% of which was cocaine.  McGill was also asked, "[n]ow, if [the sample] was mixed with something, for example, a macadamia nut, and you had an opportunity to test it, would it test positive for the presence of cocaine?"  After an objection by defense counsel was overruled, McGill answered, "[y]es, I believe I could."

On cross-examination, McGill was questioned as to the testing he performed.  McGill testified that he first weighed the materials given to him by the Elgin police.  After weighing, McGill used an infrared spectrophotometer to identify the substance given to him by the police.  He testified that the instrument worked by sending a beam of infrared light onto the sample and then measuring the different absorptions occurring from the sample.  According to McGill, different drugs, and different molecules in general, absorb infrared light at different wavelengths and degrees.  The machine produces a chart which can be compared to charts of known standards to identify the substance.  The following exchange then occurred between defense counsel and McGill:

"[DEFENSE COUNSEL]: Is [the analysis with the infrared spectrometer] qualitative or quantitative?

[McGILL]: In the manner that I used it, it's qualitative in that I am using it to identify what drug is present, not to identify a percent purity of the drug that's present.

[DEFENSE COUNSEL]: How do you perform a quantitative analysis?

[McGILL]: With that instrument, which is one I normally wouldn't use, as a matter of fact, I have never used in the form of a quantitative analysis, but it can be, you could measure the – the specific wavelength that cocaine or any drug that you might be doing a quantitative analysis on absorbs that, you could use that wavelength, measure the absorbance of a sample you prepare, then run a standard of known concentration in the instrument, measure that absorbance, and by comparing the two absorbances come up with a percent purity of your sample."

McGill then testified that the he did a quantitative analysis of the mixture he prepared and that the test was performed on only a small amount of the total 77.8 grams he prepared.

On redirect examination, McGill testified that he prepared the mixture using approximately 6 grams of Mannitol and 60 grams of Inositol mixed with the cocaine given to him.  He put the substances in a mortar and ground them up very thoroughly with a pestle to produce a fine powder.  Furthermore, he stated that the sample size upon which the quantitative analysis was done was between 200 and 500 milligrams of the mixture.  With regard to the quantitative analysis, the following exchange took place:

"[ASSISTANT STATE'S ATTORNEY]: Now, in terms of the quantitative analysis, you just did the one –

[McGILL]: One test to determine –

[ASSISTANT STATE'S ATTORNEY]: -- correct?

[McGILL]: Quantitative analysis, yes, that's correct.

[ASSISTANT STATE'S ATTORNEY]: And why is that?

[McGILL]: That's all that's needed.

[ASSISTANT STATE'S ATTORNEY]: Okay.  So it would have been redundant to do any further quantitative?

[McGILL]: That's correct."

Upon further redirect examination, the assistant State's Attorney asked:

"[ASSISTANT STATE'S ATTORNEY]: And the reason that more than one quantitative analysis was redundant would be what?

[McGILL]: I would get the same answer."

Defendant was found guilty of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2002)) and was sentenced to two years and six months in the Illinois Department of Corrections.  Defendant filed various posttrial motions which were, in relevant part, denied.  Defendant filed a timely appeal.

II.  ANALYSIS

Defendant makes three contentions on appeal.  First, defendant contends that the State failed to prove him guilty beyond a reasonable doubt because it produced no evidence that the substance sold to defendant contained any cocaine.  Second, defendant contends that the foundation laid by McGill was improper and, therefore, did not prove that the test results were accurate.  Finally, defendant contends that the comments made by Adam regarding the reasons for the sting operations and the arrests made in the River Landings complex were improper and prejudicial.

A.  Proof that the Substance Sold to Defendant Contained Cocaine

Defendant contends that because the substances sold to him were never individually tested to determine the presence of cocaine, the State failed to prove that defendant possessed a controlled substance.  Unlawful possession of a controlled substance is defined as follows:

"Except as otherwise authorized by this Act, it is unlawful for any person knowingly to possess a controlled or counterfeit substance. ***

* * *

(c) Any person who violates this Section with regard to an amount of a controlled or counterfeit substance not set forth in subsection (a) or (d) is guilty of a Class 4 felony."  720 ILCS 570/402 (West 2002).

The parties do not dispute that cocaine is a controlled substance; therefore, the sole question before us with regard to this contention is whether the State sufficiently proved that the substance possessed by defendant contained cocaine.

The appropriate standard for a sufficiency of the evidence review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Smith
, 185 Ill. 2d 532, 541 (1999).  The State must prove in a possession of a controlled substance prosecution that the substance at issue is in fact a controlled substance.  
People v. Hagberg
, 192 Ill. 2d 29, 34 (2000).

Claims of insufficient testing usually arise in cases where drugs are seized from defendants.  In relation to such cases, our supreme court has held that "[a] chemist *** generally need not test every sample seized in order to render an opinion as to the makeup of the substance of the whole."  
People v. Jones
, 174 Ill. 2d 427, 429 (1996).  "Rather, random testing is permissible when the seized samples are sufficiently homogenous so that one may infer beyond a reasonable doubt that the untested samples contain the same substance as those that are conclusively tested."  
Jones
, 174 Ill. 2d at 429.  "This rule is based in reason and practicality."  
Jones
, 174 Ill. 2d at 429.

We believe that the reason and practicality upon which the rule is based apply equally to a case such as this where the police have prepared a substance for sale in a reverse sting operation.  It is just as reasonable to infer that untested samples from a sufficiently homogenous substance created by the police contain the same substance as the tested samples.  In fact, we believe such an inference is even more reasonable in a case such as this where the chemist can testify as to how the substance was created.  Furthermore, the same practicality concerns present in seizure cases are present in reverse sting cases.  Chemists testing these substances do not have an unlimited amount of time to run tests and each test run has associated monetary costs in both labor and equipment.  Consequently, it would be impractical to require the State to test every part of every substance brought before it.  We see no reason why a substance produced for a reverse sting should be subject to more stringent testing than a substance that was seized.

Having determined that testing every portion of a sufficiently homogenous substance prepared by the police for a reverse sting operation is not necessary, we must now determine whether the substance in this case was sufficiently homogenous.  We find that it was.  In 
People v. Kaludis
, 146 Ill. App. 3d 888 (1986), the court found that 100 tablets seized from the defendant were sufficiently homogenous to allow testing of only three pills to prove that all the pills were the same controlled substance.  
Kaludis
, 146 Ill. App. 3d at 891-92.  In that case, the chemist was able to determine by the identical markings, lettering characteristics, bevelling, and scoring that the pills were manufactured on the same tablet press with the same set of dies.  
Kaludis
, 146 Ill. App. 3d at 892.  Our supreme court discussed 
Kaludis
 when determining whether the substances present in 
Jones
 were sufficiently homogenous.  
Jones
, 174 Ill. 2d at 429-30.

This case involves one 77.8-gram package of powder.  McGill testified that the substance was produced by mixing the cocaine with the other two powders, placing the mixture in a mortar, and grinding the mixture with a pestle.  We believe that such a procedure insured a complete and thorough mixture of the different component substances.  Furthermore, defense counsel asked Adam during cross-examination: "It was homogenous, correct?"  Adam replied: "Yes. It was all consistent, yes, sir."  Since Adam had seen the substance before it was separated into baggies, we believe his testimony reinforces the homogenous nature of the substance created by McGill.  In our opinion, such a substance is even more homogenous than pills with the same markings, lettering characteristics, bevelling, and scoring.  Therefore, we find that the substance created by McGill was sufficiently homogenous such that testing of a portion of the substance allowed the jury to infer beyond a reasonable doubt that the entire substance was 7.9% cocaine.  Consequently, the jury could infer that the substance placed on the macadamia nuts sold to defendant also contained 7.9% cocaine.  Accordingly, we find that the State presented sufficient evidence to prove beyond a reasonable doubt that the substance sold to and possessed by defendant contained cocaine.

B.  Foundation for McGill's Testimony

Defendant next contends that the foundation laid for McGill's testimony was improper for two reasons.  First, that McGill failed to testify that the test results he relied on were of the type relied on by experts in the field.  Second, that McGill failed to testify that the machines used were properly functioning at the time they were used.  Therefore, defendant reasons that the State did not prove beyond a reasonable doubt that the sample prepared by McGill contained any cocaine at all, because McGill's testimony regarding the test results was inadmissible due to lack of foundation.  The State responds that, by not objecting in the trial court,
 defendant has waived his argument that McGill failed to testify that the test results he used were of the type relied on by experts in the field
.  The State also argues that, regardless of waiver, a proper foundation was laid.

We hold that defendant has waived these contentions by not objecting in the trial court.  In order for an objection to be properly preserved for appeal, a party generally 
must object at trial and raise the issue in a posttrial motion.  
People v. Enoch
, 122 Ill. 2d 176, 187 (1988).
  There was only one trial objection regarding the foundation for McGill's testimony.  McGill testified that the sample he tested contained 7.9% cocaine and then the following exchange occurred:

"[ASSISTANT STATE'S ATTORNEY]: Now, when you say 7.9 percent cocaine calculated at its base, is that 7.9 percent 
throughout the entire powder that you have – that you have mixed up?

[DEFENSE COUNSEL]: Objection.  There is no foundation for that question.

THE COURT: I will sustain the objection on that particular question, but it's certainly a topic you can pursue." 

Clearly, this foundational objection was aimed at the testimony regarding whether the substance was homogenous or consistent, not at the test results.  Defense counsel made no foundational objection when those results were being presented.  Therefore, we find that defendant did not object to the foundation required to admit the results of the tests run by McGill.  While it is true that defendant did move to strike McGill's testimony, claiming that it was irrelevant and that the accuracy of the equipment used by McGill was not established, this motion did not amount to a proper trial objection. An objection at trial must be made contemporaneously in order to preserve an issue for appeal.  
People v. Robinson
, 157 Ill. 2d 68, 83 (1993), citing 
Enoch
, 122 Ill. 2d at 186. 
 A motion to strike after the evidence has been received is not a timely objection.  
Holder v. Caselton
, 275 Ill. App. 3d 950, 957 (1995).  In this case, defendant did not move to strike McGill's testimony until after McGill and another witness had testified and, thus, it was untimely.  Therefore, the motion cannot be considered a proper objection. 

Furthermore, we find that even if a proper foundation was not laid and, therefore, McGill's trial testimony that the mixture contained cocaine was improperly admitted, the State has otherwise proved that the substance created by McGill did contain cocaine and that the sample tested by McGill contained 7.9% cocaine.  The following exchange occurred during the trial:

"[ASSISTANT STATE'S ATTORNEY]: I show you what I have marked as People's Exhibit No. 1 for identification purposes.  Would you take a look at it and tell me what that is?

[McGILL]: That's a report I issued giving a result of my analysis on the case.

[ASSISTANT STATE'S ATTORNEY]: Okay.  And this is your report that you prepared?

[McGILL]: That's correct.

[ASSISTANT STATE'S ATTORNEY]: Okay.  And this report would have been submitted to who?

[McGILL]: To the Elgin Police Department.

[ASSISTANT STATE'S ATTORNEY]: Okay.  And the results that were indicated in here described the weight?

[McGILL]: Yes, they do.

[ASSISTANT STATE'S ATTORNEY]: And the weight being what?

[McGILL]: 77.8 grams.

[ASSISTANT STATE'S ATTORNEY]: Okay.  And the percentage of cocaine that is base being what percent?

[McGILL]: 7.9 percent.

[ASSISTANT STATE'S ATTORNEY]: Judge, I would move to have admitted into evidence People's Exhibit No. 1.

[DEFENSE COUNSEL]: No objection.

THE COURT: Admitted."

Thus, this exchange makes clear that defendant did not object to the admission of the report and, in fact, defense counsel specifically stated that he had no objection.  As we have already stated, in order for an objection to be properly preserved for appeal, a party must generally object at trial and raise the issue in a posttrial motion.  
Enoch
, 122 Ill. 2d at 187.
 
 Because no objection was made, defendant cannot now claim that the report was inadmissible
.  A reasonable trier of fact could conclude from the contents of the report alone that the substance prepared by McGill did in fact contain cocaine, because the report states that the sample tested by McGill yielded a result that indicated it was 7.9% cocaine.

C.  Testimony of Detective Adam

Finally, defendant contends that portions of Adam's testimony were improper because such testimony was irrelevant and prejudicial.  Specifically, defendant points to the testimony regarding why the sting operations were being conducted and the number of arrests made in the River Landings complex area.  Defendant asserts that the admission of this testimony constitutes reversible error because Adam's testimony affected the jury's verdict.  Defendant does not contend that the testimony affected his right to a fair trial in any other way.  We find that even if Adam's testimony was irrelevant or prejudicial, the trial court's admission of the testimony did not affect the outcome of the case.

The admission of testimony, such as that challenged here, is subject to harmless error analysis.  See 
People v. Hobley
, 159 Ill. 2d 272, 311 (1994).  Admission of improper testimony is harmless if there is overwhelming evidence to support the conviction.  See 
People v. Gill
, 54 Ill. 2d 357, 368-69 (1973).  In this case, the evidence was overwhelmingly against defendant.  Several officers, including Jones, who made the sale, testified to the events on August 9, 2002.  Furthermore, the transaction was videotaped and the tape was played in court.  Defendant presented no evidence that he did not purchase the substance from Jones that day.  Having determined that the State sufficiently proved that the substance sold to defendant contained cocaine and finding no argument that possession was not properly proved, we find that the State proved by overwhelming evidence
 that defendant committed unlawful possession of a controlled substance.

Accordingly, we reject defendant's contention that the testimony of Adam constituted reversible error.

III. CONCLUSION

For the foregoing reasons we affirm defendant's conviction of unlawful possession of a controlled substance.

Affirmed.

O'MALLEY, P.J., and BOWMAN, J., concur
.