In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2207

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MATTHEW ELDER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 3:13-cr-00017-RLY-CMM-8 — **Richard L. Young**, *Judge*.

ARGUED MAY 22, 2018 — DECIDED AUGUST 15, 2018

Before FLAUM and RIPPLE, *Circuit Judges*, and GETTLEMAN,
*District Judge*.*

RIPPLE, *Circuit Judge*. In 2015, Matthew Elder was con-
victed of conspiring to distribute 50 grams or more of meth-

---

* The Honorable Robert W. Gettleman of the Northern District of Illinois,
sitting by designation.

amphetamine and 500 grams or more of a mixture or sub-
stance containing a detectable amount of methamphetamine,
in violation of 21 U.S.C. §§ 841 and 846. At his first sentenc-
ing, the district court concluded that Mr. Elder was subject
to a mandatory term of life imprisonment under
§ 841(b)(1)(A) because he had two prior "felony drug of-
fense" convictions. We remanded for resentencing because
we concluded that one of his prior convictions did not quali-
fy as a felony drug offense as that term is defined by 21
U.S.C. § 802(44). We also directed the district court to decide
whether his second prior conviction, from Arizona in 1999,
qualified. *United States v. Elder* (*Elder I*), 840 F.3d 455, 462 n.2
(7th Cir. 2016).

At Mr. Elder's second sentencing, the district court con-
cluded that the second of Mr. Elder's prior convictions quali-
fied as a felony drug offense under § 841(b)(1)(A) and, ac-
cordingly, that Mr. Elder was subject to a mandatory mini-
mum sentence of twenty years' imprisonment. The district
court calculated Mr. Elder's guidelines range to be 324 to 405
months' imprisonment and sentenced Mr. Elder below the
guidelines range to 260 months' imprisonment. Mr. Elder
now appeals his new sentence.

For the reasons stated in this opinion, we agree with
Mr. Elder that the 1999 Arizona conviction is not a "felony
drug offense" as defined by § 802(44). We therefore issue a
limited remand under *United States v. Paladino*, 401 F.3d 471,
483–84 (7th Cir. 2005), to permit the district court to deter-
mine whether this error was harmless.

# I

# BACKGROUND

## A.

In 2013, Mr. Elder and his father were charged, along with six other codefendants, with having conspired "to traffic large quantities of methamphetamine from Arizona to southwest Indiana." *Elder I*, 840 F.3d at 457. The six other codefendants pleaded guilty; Mr. Elder and his father pleaded not guilty and went to trial. Mr. Elder was found guilty of conspiring to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841 and 846.

At the time of his present conviction, Mr. Elder had two prior Arizona drug convictions. In 1997, Mr. Elder was convicted of possession of drug paraphernalia, in violation of Arizona Revised Statutes section 13-3415. We will refer to Mr. Elder's 1997 conviction as his "drug paraphernalia" conviction. In 1999, Mr. Elder pleaded guilty to possession of equipment or chemicals for the manufacture of dangerous drugs, in violation of Arizona Revised Statutes section 13-3407(A)(3). We will refer to Mr. Elder's 1999 conviction as his "dangerous drug" conviction. This conviction is the focus of the present appeal. At the time that Mr. Elder pleaded guilty,[1] the statute supporting the "dangerous drug" conviction was structured in the following way:

---

[1] The relevant Arizona statutes have since been amended. From this point forward in the opinion, unless otherwise stated, all references to

(continued … )

    A.  A person shall not knowingly;
1. Possess or use a dangerous drug.
2. Possess a dangerous drug for sale.
3. Possess equipment or chemicals, or both, for the purpose of manufacturing a dangerous drug.
4. Manufacture a dangerous drug.
5. Administer a dangerous drug to another person.
6. Obtain or procure the administration of a dangerous drug by fraud, deceit, misrepresentation or subterfuge.
7. Transport for sale, import into this state or offer to transport for sale or import into this state, sell, transfer or offer to sell or transfer a dangerous drug.

Ariz. Rev. Stat. § 13-3407(A). Section 13-3407(A) therefore criminalizes conduct related to "dangerous drug[s]" as a broad category, rather than any specific drugs.

"Dangerous drug" is further defined in Arizona Revised Statutes section 13-3401(6). Section 13-3401(6) names broad categories of drugs ("hallucinogenic substances," "stimulant[s]," "depressant[s]," and "anabolic steroids") but then defines only specific chemical compounds within those categories as "dangerous drugs." *Id.* § 13-3401(6)(a) (hallucinogenic substances); *id.* § 13-3401(6)(b) (stimulants); *id.*

---

( … continued)

the Arizona code are to the version of the code that was in effect at the time Mr. Elder pleaded guilty.

§ 13-3401(6)(c) (depressants); *id.* § 13-3401(6)(d) (anabolic steroids). For example, the "stimulant" category is broken down into twenty-four specific chemical compounds that are "dangerous drugs," including "amphetamine," "methamphetamine," and "phentermine." *Id.* § 13-3401(6)(b)(i), (xii), (xx).

## B.

Prior to Mr. Elder's original sentencing in this case, the Government filed a motion under 21 U.S.C. § 851,[2] indicat-

---

[2] Section 851(a) provides:

(a) Information filed by United States Attorney

(1) No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. Upon a showing by the United States attorney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court may postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts. Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence.

(2) An information may not be filed under this section if the increased punishment which may be imposed is imprisonment for a term in excess of three years unless the person either waived or was afforded prosecution by indictment for

(continued … )

ing its intent to rely on the 1997 conviction for possession of drug paraphernalia and the 1999 dangerous drug conviction at sentencing as "felony drug offenses." These two convictions would qualify Mr. Elder for a mandatory life sentence under the three-strikes rule of 21 U.S.C. § 841(b)(1)(A).

Section 841 provides that any person convicted under that section is subject to a mandatory minimum sentence of ten years' imprisonment. It further provides for a mandatory minimum sentence of either twenty years or life imprisonment for any person convicted under § 841 who has either one or two (or more) prior "felony drug offense" convictions, respectively. "Felony drug offense" is defined at 21 U.S.C. § 802(44) as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances."

Mr. Elder filed a motion to dismiss the information filed pursuant to 21 U.S.C. § 851; he argued that neither the drug paraphernalia conviction nor the dangerous drug conviction was a "felony drug offense" because the convictions did not "relat[e] to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances," as 21 U.S.C. § 802(44) defines "felony drug offense" for purposes of § 841. The dis-

---

( … continued)
    the offense for which such increased punishment may be
    imposed.

21 U.S.C. § 851(a).

trict court disagreed and believed that § 841(b)(1)(A) re-
quired the imposition of a life sentence.

In the first of his two appeals, Mr. Elder renewed the ar-
gument made to the district court that his 1999 dangerous
drug conviction was not a felony drug offense. He also
raised an argument, not made to the district court, that his
1997 drug paraphernalia conviction was not a felony drug
offense because it was not punishable by more than one
year, a point that all parties and the district court had over-
looked. *Elder I*, 840 F.3d at 461. The Government conceded
that the drug paraphernalia conviction was not a felony
drug offense and, therefore, that the district court had im-
properly imposed a life sentence. We held that the district
court plainly erred in finding that Mr. Elder had committed
two prior felony drug offenses and remanded for a full re-
sentencing. In doing so, we addressed only the drug para-
phernalia conviction and left the parties "free to address the
significance of the 1999 conviction on remand." *Id.* at 462 n.2.

## C.

At Mr. Elder's resentencing, the probation officer issued
a revised presentence investigation report. She took the view
that, even though Mr. Elder's drug paraphernalia conviction
no longer was considered a felony drug offense, his sentenc-
ing range (324 to 405 months) had not changed. However,
without the 1997 drug paraphernalia conviction, his statuto-
ry mandatory minimum dropped from life imprisonment to
twenty years' imprisonment. 21 U.S.C. § 841(b)(1)(A).

For his part, Mr. Elder filed a new motion to dismiss the
§ 851 information based on the 1999 dangerous drug convic-

tion. First, he argued that the Government had failed to prove that the dangerous drug conviction was a felony drug offense because it had not produced any evidence relating to the conviction.[3] Second, he argued that Arizona's definition of "dangerous drug" in section 13-3401 is broader than the categories of drugs enumerated in the definition of "felony drug offense" under § 802(44). Without a prior felony drug offense conviction that qualified under § 841(b)(1)(A), Mr. Elder's statutory minimum would drop to ten years' imprisonment. *See* § 841(b)(1)(A).

The district court rejected Mr. Elder's objection to the § 851 information, but it did not elaborate on its reasoning other than to say that it "adopt[ed] the findings and the reasoning in the conclusion" of its original June 2015 sentencing order.[4] In the June 2015 proceeding, however, the district court had addressed only Mr. Elder's argument that his conviction did not "relate to" drugs referred to in the federal definition of felony drug offense, but did not reach Mr. Elder's more specific arguments: that the Government had not met its burden of producing any evidence related to the 1999 dangerous drug conviction; or, in the alternative, that Arizona's definition of "dangerous drug" is broader than the list of drugs in § 802(44) and, therefore, that the dangerous drug conviction cannot serve as a predicate offense under § 841(b)(1)(A).

---

[3] Mr. Elder's presentence report states that no information was available regarding the conviction.

[4] R.561 at 10.

The district court calculated a total offense level of 38 and a criminal history score of 8 (resulting in a criminal history category of IV). That calculation led the district court to a guidelines range of 324 to 405 months, the same range as the one employed at Mr. Elder's first sentencing. The district court noted that, given what it viewed as one prior felony drug offense conviction (for the 1999 Arizona conviction), the "absolute minimum" sentence allowed was 240 months.[5] After considering the factors under 18 U.S.C. § 3553(a), the district court settled on a below-guidelines sentence of 260 months' imprisonment with ten years' supervised release, remarking that it "didn't think a guideline sentence was the appropriate sentence here."[6]

Counsel for Mr. Elder mentioned that Mr. Elder might want to appeal his sentence based on the district court's treatment of the 1999 dangerous drug conviction. The district court informed Mr. Elder that his guidelines range would not change. However, the district court said nothing about whether it would have imposed a different sentence if Mr. Elder's *statutory* range had been lower.

## II

## DISCUSSION

Mr. Elder now appeals his second sentence. He submits that the categorical approach of *Taylor v. United States*, 495

---

[5] *Id.* at 45.

[6] *Id.* at 46.

U.S. 575 (1990), applies to the analysis of whether his 1999 dangerous drug Arizona conviction qualifies as a felony drug offense. Under that approach, he says, his conviction does not qualify because the Arizona statute criminalizes a broader category of drugs than § 802(44) incorporates. Consequently, he should be subject to a statutory minimum of ten, not twenty, years' imprisonment.

We agree with Mr. Elder that the district court applied the wrong statutory minimum from § 841(b)(1)(A). The district court should have applied *Taylor*'s categorical approach to § 841(b)(1)(A) and § 802(44). *See also Mathis v. United States*, 136 S. Ct. 2243 (2016). Mr. Elder's 1999 dangerous drug conviction cannot qualify as a felony drug offense under § 802(44) because Arizona's definition of "dangerous drug" is broader than the list of drugs covered by § 802(44). This is true even if the Government could have proven that the 1999 conviction related to one of the drugs covered under § 802(44); under the categorical approach, the actual facts underlying Mr. Elder's conviction are irrelevant.

We will explain our holding in three parts. First, we will explain why the categorical approach of *Taylor*, as opposed to the circumstance-specific approach of *Nijhawan v. Holder*, 557 U.S. 29 (2009), must apply to our analysis of predicate offenses under § 841(b)(1)(A) and § 802(44). Second, we will explain why Mr. Elder's 1999 dangerous drug conviction does not qualify as a felony drug offense under the categorical analysis. Finally, we will address the appropriate remedy.

**A.**

Section 841(b)(1)(A) provides for certain mandatory minimum sentences on the basis of prior convictions for felony drug offenses. A felony drug offense is defined by 21 U.S.C. § 802(44) to mean "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." Because § 802(44) defines felony drug offense in part by reference to state law, a mandatory minimum under § 841(b)(1)(A) can be predicated on prior convictions under state law. Determining whether a given state conviction qualifies as a felony drug offense under § 802(44), however, presents a complicated question, and it is a question of first impression for this court.[7]

The Supreme Court has developed two different approaches, applicable in different circumstances, for determining whether a given state conviction qualifies as a predicate offense under federal recidivism statutes. Sometimes the Court applies what it calls the "categorical" approach, com-

---

[7] In *Brock-Miller v. United States*, 887 F.3d 298 (7th Cir. 2018), we "reserve[d] for another day the question of whether the … categorical approach applies to the term 'felony drug offense' for the purpose of" § 841. *Id.* at 307. There, however, the defendant's prior conviction was not a felony drug offense under *any* approach because the defendant's statute of conviction and her actual conduct related to *prescription* drugs. *Id.* at 305. We noted that there was "little to no overlap between the controlled substances listed in the federal definition of 'felony drug offense' and the prescription" drugs criminalized under the state statute. *Id.*

paring the state statute of conviction to the federal statute in question and asking whether the two statutes are a categorical match. The categorical approach "focus[es] solely on whether the elements of the crime of conviction sufficiently match the elements of [the crime referenced in the federal statute], while ignoring the particular facts of the case." *Mathis*, 136 S. Ct. at 2248. In other circumstances, the Supreme Court applies what it calls the "circumstance-specific approach." In these cases, it looks to "the specific way in which an offender committed the crime on a specific occasion" to determine whether the prior conviction qualifies as a predicate offense under the federal statute at issue. *Nijhawan*, 557 U.S. at 34.

The Supreme Court has identified three factors that favor application of the categorical approach. *See Mathis*, 136 S. Ct. at 2252–53. First, the Court looks to the text of the federal recidivism statute at issue to determine whether it refers to a generic *conviction* or to the defendant's actual *conduct*. *Id.* at 2252. In this process the Court has considered the statute's legislative history. *See Descamps v. United States*, 570 U.S. 254, 267–68 (2013); *Taylor*, 495 U.S. at 601. Second, the Court considers whether applying a circumstance-specific approach would raise "Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that properly belong to juries." *Descamps*, 570 U.S. at 267. Finally, the Court considers whether applying a circumstance-specific approach would result in "practical difficulties and potential unfairness" to defendants. *Id.* (quoting *Taylor*, 495 U.S. at 601).

In determining whether § 841(b)(1)(A) and § 802(44) call for a categorical approach, we therefore must begin with the

text of the statutes. Section 841(b)(1)(A) requires an increase in the mandatory minimum sentence for any defendant convicted under § 841 "after a prior conviction for a felony drug offense has become final." "Felony drug offense" is defined by § 802(44) as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances."[8] Here, the question is whether the qualifier "relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances"[9] refers to the statute of his conviction categorically or refers to the defendant's conduct underlying his previous drug conviction. Several characteristics of the statutes' texts and the structure of the overall statutory scheme convince us that, in combination, § 841(b)(1)(A) and § 802(44) require a categorical approach.

First, § 841(b)(1)(A) refers to a defendant who has "a prior *conviction* for a felony drug offense," not a defendant who has *committed* a felony drug offense. § 841(b)(1)(A) (emphasis added). This terminology supports the view that "Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within cer-

---

[8] Section 802(44) provides the "exclusive[]" definition of "felony drug offense" for purposes of applying § 841(b)(1)(A). *Burgess v. United States*, 553 U.S. 124, 126 (2008); *see also Brock-Miller*, 887 F.3d at 307.

[9] Each of these named categories of drugs then is further defined in § 802. *See, e.g.,* § 802(9) ("depressant or stimulant substance"); § 802(16) ("marihuana"); § 802(17) ("narcotic drug"); § 802(41)(A) ("anabolic steroid").

tain categories, and not to the facts underlying the prior conviction." *Taylor*, 495 U.S. at 600 (statute requires categorical approach when it "refers to 'a person who … has three previous convictions' for—not a person who has committed—three previous violent felonies or drug offenses" (alteration in original)).

The structure of § 802(44) also supports this approach. The language "relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances" in § 802(44) modifies the phrase "any law of the United States or of a State or foreign country." *Cf. Nijhawan*, 557 U.S. at 38 (concluding that the circumstance-specific approach applied when factual qualifier grammatically modified reference to defendant's conduct as opposed to elements of the offense). Therefore, in determining whether a defendant's prior conviction is a felony drug offense under § 802(44), we must ask whether the *law of his conviction* "prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances," not whether the defendant's actual conduct related to one of those substances. The Supreme Court's first factor therefore weighs in favor of the categorical approach.

Next, we turn to "the categorical approach's Sixth Amendment underpinnings." *Descamps*, 570 U.S. at 269. It is well established that "[m]andatory minimum sentences increase the penalty for a crime." *Alleyne v. United States*, 570 U.S. 99, 103 (2013). "Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to a jury and found beyond a reasonable doubt." *Id.* at 103. Applying the categorical approach to statutes that increase the penalty for a crime, like § 841(b)(1)(A), protects defendants'

Sixth Amendment rights by ensuring that, in applying sentencing enhancements, sentencing courts consider only those facts that necessarily were submitted to a jury and proven beyond a reasonable doubt.

The sole and narrow exception to this rule—that all facts that increase the penalty for a crime be found by a jury—is the fact of a prior conviction. *Id.* at 111 n.1; *see also Almendarez-Torres v. United States*, 523 U.S. 224 (1998). However, § 841(b)(1)(A) does not increase a defendant's mandatory minimum sentence solely on the basis of a prior conviction. Instead, it applies a mandatory minimum sentence to defendants whose prior convictions meet certain criteria— namely, that the conviction was for a prior felony drug offense as defined in § 802(44). *Almendarez-Torres* applies to the fact of a conviction itself; it does not apply to "a fact *about* a prior conviction." *Shepard v. United States*, 544 U.S. 13, 25 (2005) (emphasis added). In applying a statute that increases the mandatory minimum sentence for a crime, the sentencing court "cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense." *Mathis*, 136 S. Ct. at 2252.

Allowing a sentencing court to determine, on the basis of its own factfinding, that a defendant's prior conviction "relat[ed] to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances," § 802(44), raises the very Sixth Amendment concerns against which the Supreme Court repeatedly has warned in applying recidivism statutes. *E.g.*, *Descamps*, 570 U.S. at 269 ("Accordingly, that finding would (at the least) raise serious Sixth Amendment concerns if it went beyond merely identifying a prior conviction."). Rather, the sentencing court "can do no more, con-

sistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of." *Mathis*, 136 S. Ct. at 2252.[10]

Finally, we consider whether the categorical approach "avoids unfairness to defendants." *Id.* at 2253. The Supreme Court has recognized that "[s]tatements of 'non-elemental fact' in the records of prior convictions are prone to error precisely because their proof is unnecessary." *Id.* (quoting *Descamps*, 570 U.S. at 270). "[A] defendant may have no incentive to contest what does not matter under the law[.] … When that is true, a prosecutor's or judge's mistake … reflected in the record[] is likely to go uncorrected." *Id.*; *see also Descamps*, 570 U.S. at 270 ("And during plea hearings, the defendant may not wish to irk the prosecutor or court by squabbling about superfluous factual allegations."). We ap-

---

[10] We note that the Government never presented to the sentencing court evidence of the dangerous drug for which Mr. Elder was convicted in 1999. Mr. Elder's presentence report notes that no information was available about the 1999 conviction. Even on appeal, the Government states in its brief that it did not have such evidence but "has reason to believe that Elder's 1999 conviction related to meth." Gov't Br. 18. Sometime after the Government submitted its brief in this court, it discovered in its records a certified copy of the charging information from the 1999 dangerous drug conviction. The Government submitted a letter under Federal Rule of Appellate Procedure 28(j) to "inform the Court about the inaccuracy in its brief" and attempted to supplement the record by attaching a copy of the charging information. App. R. 21 at 2.

Because we hold that the categorical approach applies to all enhancements under § 841(b)(1)(A), we will not examine the Government's newfound evidence to determine whether Mr. Elder was, in fact, charged with an offense related to methamphetamine.

ply the categorical approach because its focus on *elements*, rather than extraneous facts, means that any "inaccuracies" in the record documents do "not come back to haunt the defendant many years down the road by triggering a lengthy mandatory sentence." *Mathis*, 136 S. Ct. at 2253.

Here, all three factors historically relied on by the Supreme Court to justify the categorical approach support its application to § 841(b)(1)(A) and § 802(44), and we adopt that approach.[11] The text of § 841(b)(1)(A) and § 802(44) clearly requires a categorical approach by asking us to examine the defendant's statute of conviction—in other words, whether the defendant has a "conviction," § 841(b)(1)(A), "under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to" certain substances, § 802(44). Moreover, any other approach would "raise serious Sixth Amendment concerns," *Descamps*, 570 U.S. at 269, because it could allow the sentencing court to "go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense," *Mathis*, 136 S. Ct. at 2252. Finally, applying the categorical approach avoids unfairness to defendants by not placing the burden on defendants to challenge extraneous

---

[11] Our conclusion that the categorical approach applies to § 841(b)(1)(A) and § 802(44) is consistent with the Ninth Circuit's decision in *United States v. Ocampo-Estrada*, 873 F.3d 661, 667 (9th Cir. 2017) (stating that, in determining whether a state conviction qualifies "as a federal felony drug offense," the court "look[s] to the statutory elements under which the offender was previously convicted, rather than the underlying conduct or facts giving rise to that conviction").

factual inaccuracies in record documents not regarding elements of the offense.

**B.**

Next, we turn to the question whether, under the categorical approach, Mr. Elder's 1999 Arizona dangerous drug conviction is a "felony drug offense" under § 802(44).

Under the categorical approach, we determine whether the state conviction can serve as a predicate offense by comparing the elements of the state statute of conviction to the elements of the federal recidivism statute. *Id.* at 2248–49. "A state crime may qualify as a predicate conviction only if the elements of the state crime mirror, or are narrower than, the elements of the generic crime." *United States v. Zuniga-Galeana*, 799 F.3d 801, 804 (7th Cir. 2015) (per curiam). "If state law defines the offense more broadly than the [federal statute], the prior conviction doesn't qualify as a [predicate offense], even if the defendant's *conduct* satisfies all of the elements of the [federal] offense." *United States v. Edwards*, 836 F.3d 831, 833 (7th Cir. 2016) (emphasis in original).

Here, Arizona Revised Statutes section 13-3407 sweeps more broadly than the definition of felony drug offense in § 802(44) because the definition of "dangerous drugs" in section 13-3401 reaches at least two substances that are not included in § 802(44). Specifically, Arizona defines "[p]ropylhexedrine" and "[s]copolamine" as dangerous drugs, § 13-3401(6); neither is covered under the definitions in § 802(44). In short, Mr. Elder could have been convicted under § 13-3407 for a drug offense relating to a substance that is not covered under § 802(44). This mismatch renders

the Arizona law categorically broader than § 802(44), and Mr. Elder's conviction under that statute therefore cannot serve as a predicate offense.[12]

Because Mr. Elder's 1999 dangerous drug conviction cannot serve as a predicate offense under § 841(b)(1)(A) and § 802(44), the district court erred in concluding that Mr. Elder was subject to a mandatory twenty-year minimum sentence for having a prior felony drug offense conviction.

The Government contends that even if the categorical approach applies, we are permitted to examine a limited class of record documents under the so-called "modified" categorical approach. The modified categorical approach applies "when a statute is 'divisible,' meaning it 'sets out one or more elements of the offense in the alternative.'" *Edwards*, 836 F.3d at 835 (quoting *Descamps*, 570 U.S. at 257). For example, a statute may criminalize "'the lawful entry or the unlawful entry' of a premises with intent to steal, so as to create two different offenses, one more serious than the other." *Mathis*, 136 S. Ct. at 2249. There, the "statute's disjunctive phrasing renders [it] opaque" which crime the defendant was convicted of. *Id.* at 2253. The modified categorical approach is a tool to "implement the categorical approach" and a "mechanism for making the [categorical approach's] comparison when a statute lists multiple, alternative elements." *Descamps*, 570 U.S. at 263–64.

---

[12] Under the categorical approach, we are prohibited from examining Mr. Elder's conduct to determine whether his 1999 dangerous drug conviction related to a drug that *is* covered by § 802(44).

If a statute truly is divisible, we may "consult a limited class of documents … to determine which alternative formed the basis of the defendant's prior conviction." *Descamps*, 570 U.S. at 257.[13] The documents we may consult are "charging papers, jury instructions, and any available plea agreements or plea colloquies." *Edwards*, 836 F.3d at 835 (citing *Shepard*, 544 U.S. at 20).

As we have said, the modified categorical approach applies only to *divisible* statutes. "A statute that defines a single offense with alternative *means* of satisfying a particular element is *indivisible* and therefore not subject to the modified categorical approach." *Id.* (second emphasis added). For example, a criminal statute might "require[] use of a 'deadly weapon' as an element of a crime" and also further provide "that the use of a 'knife, gun, bat, or similar weapon' would all qualify." *Mathis*, 136 S. Ct. at 2249. The list of weapons "merely specifies diverse means of satisfying a single element of a single crime"—it does not create a separate crime for each means by which the element could be satisfied. *Id.* "Means … are legally extraneous facts that 'need neither be found by a jury nor admitted by a defendant.'" *Edwards*, 836 F.3d at 836 (quoting *Mathis*, 136 S. Ct. at 2248). In applying the "deadly weapons" statute, for instance, the jury would

---

[13] The modified categorical approach never gives a sentencing court license to consult the *facts* underlying the defendant's prior conviction to determine whether it qualifies as a predicate offense. *See Mathis v. United States*, 136 S. Ct. 2243, 2254 (2016) ("It is not to be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts (or otherwise said, involved means) that also could have satisfied the elements of a generic offense.").

need to find that the defendant used *a* deadly weapon but need not agree on which deadly weapon was used. *Mathis*, 136 S. Ct. at 2249.

In determining whether a statute is divisible, we look first to whether there is "a decision by the state supreme court authoritatively construing the relevant statute" and establishing which facts are elements and which are means. *Edwards*, 836 F.3d at 836. "Absent a controlling state-court decision, the text and structure of the statute itself may provide the answer." *Id.* Finally, "[f]ailing those 'authoritative sources of state law,' sentencing courts may look to 'the record of a prior conviction itself' for the limited purpose of distinguishing between elements and means." *Id.* (quoting *Mathis*, 136 S. Ct. at 2256–57).

Here, Arizona Revised Statutes section 13-3407(A)(3) prohibits "[p]ossess[ing] equipment or chemicals, or both, for the purpose of manufacturing a dangerous drug." "Dangerous drug" is defined elsewhere in the Arizona code. The question is whether section 13-3407(A)(3) is divisible such that the *type* of dangerous drug is an element of the offense, as opposed to a means of committing the offense.

The parties have not invited our attention to (and we have not located ourselves) a decision of the Arizona Supreme Court that instructs us that the type of dangerous drug is an element of Arizona Revised Statutes § 13-3407(A)(3). We are convinced, moreover, by the structure of Arizona Revised Statutes section 13-3407(A)(3) and the definition of "dangerous drug," Ariz. Rev. Stat. § 13-3401(6), that Arizona Revised Statutes section 13-3407(A)(3) is not divisible. Simply put, section 13-3407(A)(3) requires only that the defendant "[p]ossess equipment or chemicals, or both, for

the purpose of manufacturing *a dangerous drug*." § 13-3407(A)(3) (emphasis added). Dangerous drug is defined in an entirely different section of the Arizona code. The structural separation of the term "dangerous drug" from its definition makes its indivisibility clear. "Dangerous drug" is an element of a conviction under section 13-3407(A)(3); the type of dangerous drug is not.

Therefore, Arizona Revised Statutes section 13-3407(A)(3) is not divisible, and the modified categorical approach is not appropriate. We cannot examine the record documents that the Government has presented to determine the type of dangerous drug underlying Mr. Elder's 1999 conviction.

### C.

Because we have determined that the district court committed legal error in concluding that Mr. Elder was subject to a twenty-year mandatory minimum sentence, we now address the appropriate remedy. The district court calculated Mr. Elder's guidelines range to be 324 to 405 months' imprisonment and sentenced Mr. Elder to 260 months' imprisonment, a below-guidelines sentence. The Government contends that any error in applying § 802(44) was harmless and does not require resentencing.

"A finding of harmless error is only appropriate when the government has proved that the district court's sentencing error did not affect the defendant's substantial rights (here—liberty)." *United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009). "To prove harmless error, the government must be able to show that the [sentencing] error 'did not affect the district court's selection of the sentence imposed.'" *Id.* (quot-

ing *United States v. Anderson*, 517 F.3d 953, 965 (7th Cir. 2008)). For example, we have found harmless error when the sentencing court "expresse[s] [its] determination to impose the same sentence even if [it] had gotten the calculations wrong." *Id.* at 667.

Here, it is not clear from the record whether the district court would have imposed the same sentence regardless of the mandatory minimum. The district court noted that even if Mr. Elder appealed his sentence, his guidelines range would not change. That is true. However, under our holding today, Mr. Elder's *statutory* range has decreased significantly. Because Mr. Elder no longer has a prior conviction that qualifies as a felony drug offense under § 802(44), his mandatory minimum sentence is ten years, not twenty years. The district court did *not* say that it would have imposed the same sentence regardless of the statutory range.

We conclude that "[t]he only practical way … to determine whether … the error was prejudicial" is "to ask the district judge." *Paladino*, 401 F.3d at 483–84. We will "order a limited remand to permit the sentencing judge to determine whether he would (if required to resentence) reimpose his original sentence." *Id.* at 484. If the district court confirms that it would have imposed the same sentence regardless of the statutory range, we will "affirm the original sentence." *Id.* If, however, the district court "states … that he would have imposed a different sentence[,] … we will vacate the original sentence and remand for resentencing." *Id.* Either way, the district court must "place on the record a decision not to resentence, with an appropriate explanation, or inform this court of its desire to resentence the defendant." *Id.*

(citation omitted) (quoting *United States v. Crosby*, 397 F.3d 103, 120 (2d Cir. 2005)).

## Conclusion

For the reasons set forth in the foregoing opinion, we direct a limited remand of Mr. Elder's sentence in accordance with the procedure set forth in *Paladino*, 401 F.3d at 484–85, while retaining appellate jurisdiction.

REMANDED