In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-2416

JULIO CESAR NAJERA-RODRIGUEZ,

*Petitioner*,

*v.*

WILLIAM P. BARR,
Attorney General of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A060-280-595.

ARGUED APRIL 4, 2019 — DECIDED JUNE 4, 2019

Before RIPPLE, HAMILTON, and ST. EVE, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Petitioner Julio Cesar Najera-Rodriguez is a lawful permanent resident of the United States. In 2016, an Illinois state court convicted him of unlawful possession of several Xanax pills without a prescription. Federal law provides in relevant part that any non-citizen, including a lawful permanent resident, is removable if he is convicted of a federal or state crime "relating to a controlled substance

(as defined in section 802 of title 21)." 8 U.S.C. § 1227(a)(2)(B)(i). Whether the Xanax possession conviction made Najera-Rodriguez removable depends on whether the Illinois criminal law under which he was convicted, 720 ILCS 570/402(c), is "divisible" for purposes of applying the "modified categorical approach" under the elaborate and sometimes technical body of law that has developed under federal recidivism statutes and their immigration law analogs. See, e.g., *Mejia Galindo v. Sessions*, 897 F.3d 894, 896 (7th Cir. 2018) (summarizing "categorical" and "modified categorical" approaches and "divisibility" as applied to removal of lawful permanent resident under § 1227(a)(2)(B)(i)), citing *Mellouli v. Lynch*, 135 S. Ct. 1980, 1986–87 & n.3 (2015) (holding that categorical method applies to questions under § 1227(a)(2)(B)(i)). As we explain below, 720 ILCS 570/402(c) is not divisible, so Najera-Rodriguez's conviction does not render him removable. We therefore grant his petition for judicial review, vacate the removal order, and remand this case to the Board of Immigration Appeals.

I.   *Facts and Procedural History*

Julio Cesar Najera-Rodriguez is a thirty-year-old lawful permanent resident. He moved from Mexico to the United States when he was ten years old. In 2016, he pleaded guilty to unlawful possession of a controlled substance in violation of 720 ILCS 570/402(c). He was sentenced to two years of probation, community service, alcohol and drug treatment, educational requirements, and court fines.

In October 2017, the Department of Homeland Security began proceedings to remove Najera-Rodriguez under 8 U.S.C. § 1227(a)(2)(B)(i). Najera-Rodriguez argued before an immigration judge and the Board of Immigration Appeals

that his conviction under § 402(c) did not qualify as a conviction under a law "relating to a controlled substance (as defined in section 802 of title 21)." Both the immigration judge and the Board ruled against him and ordered him removed from the United States. He petitions for judicial review of this question of law.

II. *The Legal Framework*

Some background is needed even to understand what it means to ask whether Illinois's § 402(c) is "divisible." For readers who already understand the concept well, we can foreshadow the answer: § 402(c) uses a list of "controlled substances" that includes several substances that are not controlled substances under 21 U.S.C. § 802. That means it is possible to violate Illinois's § 402(c) without violating federal law. And state law does not show that § 402(c) is divisible.

A. *The Categorical Method*

The applicable immigration provision, 8 U.S.C. § 1227(a)(2)(B)(i), is triggered by a "conviction" for violating a law "relating to a controlled substance (as defined in section 802 of title 21)."[1] Xanax (a brand name for alprazolam) is a controlled substance under 21 U.S.C. § 802. Nevertheless, controlling Supreme Court precedent requires us to consider not what Najera-Rodriguez actually did but what his conviction under Illinois's § 402(c) necessarily established vis-à-vis

---

[1] Here is the full text of the provision: "Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable." 8 U.S.C. § 1227(a)(2)(B)(i).

federal law. The Supreme Court has held that because § 1227(a)(2)(B)(i) depends on the law the non-citizen was "convicted" of violating, the focus must be on the essential elements of the crime of conviction, not the non-citizen's actual conduct leading to the conviction. *Melloulli*, 135 S. Ct. at 1986.

The parties here agree that § 402(c) covers substances that are not controlled substances under federal law. The Illinois statute covers at least some substances (e.g., salvinorin A and salvia divinorum, 720 ILCS § 204(d)(10.1) & (d)(10.5)) that are not included in the five federal schedules of controlled substances. See 21 U.S.C. §§ 802(6) & 812. It is therefore possible to violate § 402(c) in ways that do not fit the federal immigration trigger in § 1227(a)(2)(B)(i). Applying the categorical method, as required under *Mellouli*, Najera-Rodriguez cannot be removed based on his § 402(c) conviction unless the government can apply the "modified categorical approach."

B. *The Modified Categorical Approach*

Illinois's § 402(c) covers many different controlled substances, and there are thus many ways to violate it. With multiple ways to violate a particular criminal statute, some triggering federal consequences and some not, the categorical approach requires additional analysis. We have to decide whether the "modified categorical approach" can show that the state conviction is covered by the federal statute triggering the consequences, typically a harsher criminal sentence or, as in this case, removal from the United States.

When a criminal law can be violated in many ways, applying the categorical method requires consideration of whether the statute is "divisible," meaning that it defines distinct

crimes with different *elements*, not just different *means* for committing the same crime. *Mathis v. United States*, 136 S. Ct. 2243, 2248–49 (2016). If the statute is divisible, a court can turn to the "modified categorical approach," which permits a court "to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's conviction." *Descamps v. United States*, 570 U.S. 254, 257 (2013). The modified categorical approach still does not authorize a court or the Board of Immigration Appeals to dig through the facts of the underlying case. Rather, once the elements of conviction have been identified, the court or the Board compares the elements of the specific crime of conviction to the elements the federal statute requires to trigger the additional consequences. *Id.*

If § 402(c) were divisible, then we could examine the records of Najera-Rodriguez's conviction to determine whether he was convicted of a crime "relating to a controlled substance (as defined in section 802 of title 21)." 8 U.S.C. § 1227(a)(2)(B)(i). We must decide then whether § 402(c) lists alternative elements—in which case the statute is divisible and the modified categorical approach is appropriate—or whether § 402(c) merely "enumerates various factual means of committing a single element"—in which case the inquiry ends. *Mathis*, 136 S. Ct. at 2249.

The difference between "elements" and "means" can seem slippery, sometimes almost metaphysical, but significant legal consequences flow from that difference. "'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Mathis*, 136 S. Ct. at 2248, quoting Black's Law Dictionary 634 (10th ed. 2014). And just as a prosecutor must prove beyond a

reasonable doubt every element of a crime to a jury, a defendant pleading guilty necessarily admits every element of the crime. *Id.* By way of contrast, the facts of the offense "are mere real-world things—extraneous to the crime's legal requirements," and "need neither be found by a jury nor admitted by a defendant." *Id.* In addition, the jury cannot convict without agreeing unanimously on each element of the crime, while jurors need not reach any agreement on subsidiary facts or "means" of committing the crime. *United States v. Edwards*, 836 F.3d 831, 836 (7th Cir. 2016). This distinction is critical under this body of law for collateral consequences, as well as for other purposes. For example, a crime's elements affect multiplicity challenges because the "Double Jeopardy Clause permits successive punishment or prosecution of multiple offenses arising out of the same conduct only if each offense contains a unique element." *Id.*

*Mathis* provides the Supreme Court's most recent guidance for distinguishing between elements and means, and thus for determining whether a statute is divisible for these purposes. The issue in *Mathis* was whether the Iowa burglary statute was divisible for purposes of the Armed Career Criminal Act. The Iowa burglary statute was broader than the generic burglary offense for purposes of federal law because it covered unlawful entry, with criminal purpose, of locations other than buildings. The Supreme Court found that the different locations in the state statute showed only different means for committing one crime of burglary, so that the burglary statute was not divisible and thus that the defendant's Iowa burglary convictions did not qualify for enhanced penalties under the Armed Career Criminal Act. The Court's opinion noted that its approach to divisibility would also

apply under immigration statutes that depend on criminal convictions. 136 S. Ct. at 2251–52 & n.2.

In broad strokes, *Mathis* directs federal courts (and agencies) to seek first a definitive state-court decision. *Id.* at 2256. If a decision by the state's highest court "definitively answers the question" of elements versus means, then the federal courts can just follow along. Given the consequences of deeming a particular factual finding to be an element that requires proof beyond a reasonable doubt and juror unanimity, one could expect a court's holding regarding a crime's elements to be stated clearly. See, e.g., *Neder v. United States*, 527 U.S. 1, 25 (1999) ("Accordingly, we hold that materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes."); see also *Mathis*, 136 S. Ct. at 2256 (observing that Iowa Supreme Court "definitively answer[ed] the question" by holding that "[t]he listed premises in Iowa's burglary law … are 'alternative method[s]' of committing one offense, so that a jury need not agree whether the burgled location was a building, other structure, or vehicle"), quoting *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981).

In other easy cases, the statute's text may resolve the issue. *Mathis*, 136 S. Ct. at 2256. A statute is clearly divisible if the statute "itself identif[ies] which things must be charged (and so are elements)," or if its "alternatives carry different punishments," which also means "they must be elements." *Id.*; *Alleyne v. United States*, 570 U.S. 99, 111 (2013) ("any 'facts that increase the prescribed range of penalties to which a criminal defendant is exposed' are elements of the crime," and "a jury [must] find those facts beyond a reasonable doubt"), quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 484 (2000). On the other hand, "if a statutory list is drafted to offer 'illustrative

examples,' then it includes only a crime's means of commission" and is not divisible. *Mathis*, 136 S. Ct. at 2256.

But "if state law fails to provide clear answers, federal judges have another place to look: the record of a prior conviction itself." *Id.* This "peek" at the record is permitted "for the sole and limited purpose" of determining whether the listed items are elements of the offense." *Id.* at 2256–57. So, for example, if an indictment, jury instructions, and sentencing document (or perhaps another charging document, plea agreement, and sentencing document) all "referenc[e] one alternative term to the exclusion of all others," then one could say "that the statute contains a list of elements, each one of which goes toward a separate crime." *Id.* at 2257. On the other hand, a statute may be indivisible if the records of conviction are not so specific and simply "use a single umbrella term" to signal what the prosecutor must prove and need not prove. *Id.* The peek at the record does not, however, authorize a look at the facts of the defendant's individual offense to decide whether his actual conduct justifies the enhanced sentence or removal from the United States. The focus must remain on the elements of the crime in question. With this background, we turn to the specifics of Illinois's § 402(c).

III. *Analysis*

A. *Standard of Review*

We review only the Board of Immigration Appeals' decision because it was independent of the immigration judge's ruling. *Lenjinac v. Holder*, 780 F.3d 852, 855 (7th Cir. 2015). The issue here is a question of law that we have jurisdiction to review under 8 U.S.C. § 1252(a)(2)(D). The sole question is whether the Board's interpretation of the state statute of

conviction for purposes of removability is correct as a matter of law, a question that we review *de novo*. *Garcia-Martinez v. Barr*, 921 F.3d 674, 678 (7th Cir. 2019) ("Legal issues … receive plenary review in this court.").

### B. *Whether § 402(c) is Divisible*

To determine whether the different ways to violate § 402(c) reflect different means or different elements, we consider the available sources of state law. The Illinois Supreme Court cases cited by the parties did not address this question directly, so the easiest answer under *Mathis* is not available. We turn next to the statutory text and then to potentially relevant case law and other sources of state law, including pattern jury instructions, to see if they provide authoritative guidance. Finally, we consult Najera-Rodriguez's conviction records.

### 1. *The Statutory Text*

If the text of the statute shows clearly that it is divisible — e.g., by stating plainly that listed alternatives are elements of the offense or carry different punishments — we can feel confident in relying on this state-law source when opining on this issue. *Mathis*, 136 S. Ct. at 2256. We are aided in this task by reading § 402(c) in the context of surrounding provisions. To start, § 402(c) provides in full:

> Any person who violates this Section with regard to an amount of a controlled substance other than methamphetamine or counterfeit substance not set forth in subsection (a) or (d) is guilty of a Class 4 felony. The fine for a violation punishable under this subsection (c) shall not be more than $25,000.

The text of § 402(c) cannot be understood without considering the entire section, so we turn to subsections (a) and (d), which are considerably more specific about controlled substances.

Subsection 402(a) addresses Class 1 felonies and contains close to 30 separate paragraphs. Each paragraph separately identifies different substances, specific drug amounts, and the corresponding penalties. Here are some representative samples:

> (a) Any person who violates this Section with respect to the following controlled or counterfeit substances and amounts … is guilty of a Class 1 felony and shall, if sentenced to a term of imprisonment, be sentenced … as provided in this subsection (a) and fined as provided in subsection (b):
>
> (1)(A) not less than 4 years and not more than 15 years with respect to 15 grams or more but less than 100 grams of a substance containing heroin; …
>
> (2)(A) not less than 4 years and not more than 15 years with respect to 15 grams or more but less than 100 grams of any substance containing cocaine; …
>
> (7)(D) not less than 10 years and not more than 50 years with respect to: (i) 900 grams or more of any substance containing lysergic acid diethylamide (LSD), or an analog thereof, or (ii) 1500 or more objects or 1500 or more segregated parts of an object or objects containing in them or having upon them any amount of a substance

> containing lysergic acid diethylamide (LSD), or
> an analog thereof.

720 ILCS 570/402(a). The following subsection, 402(b), speci-
fies fines for violations of § 402(a) "involving 100 grams or
more of the controlled substance named therein." And like the
individual paragraphs in § 402(a), § 402(d) addresses by name
one category of controlled substances: anabolic steroids.

The different penalties for separate paragraphs in § 402(a)
signal clearly that those are different crimes with different el-
ements, so those provisions are divisible from other portions
of § 402 for purposes of 8 U.S.C. § 1227(a)(2)(B)(i). See *Mathis*,
136 S. Ct. at 2256; *Edwards*, 836 F.3d at 837 (looking to whether
statutory alternatives carry the same or different punish-
ments); *United States v. Abbott*, 748 F.3d 154, 159 (3d Cir. 2014)
(controlled substance statute was divisible because each listed
substance, although listed in a separate statutory section, was
accompanied by a "prescribed range of penalties," which ren-
dered the type of drug "an element of the crime").

Returning to § 402(c), we find a broad residual or catch-all
crime that speaks generally of "a controlled substance," one
that applies when subsections (a) and (d) do not. The term
"controlled substance" is defined in the Illinois act in 720
ILCS 570/102(f), which directs the reader in relevant part to
"the Schedules of Article II of this Act," which in turn are
found at 720 ILCS 570/204 (Schedule I), 720 ILCS 570/206
(Schedule II), 720 ILCS 570/208 (Schedule III), 720 ILCS
570/210 (Schedule IV), and 720 ILCS 570/212 (Schedule V).
Schedule IV lists alprazolam, the generic term for Xanax, the
substance Najera-Rodriguez was charged with possessing
without a prescription. Among Schedule IV's several dozen
listed substances, there is no indication that possession of one

substance versus another would call for a different penalty or any other differential treatment.

Under the language of § 402(c) and its place in the larger Illinois act, any "controlled substance" will do, subject to the explicit exceptions for methamphetamine, counterfeit substances, and anabolic steroids. The text and structure do not show that the identity of the controlled substance is an element under § 402(c). See, e.g., *Harbin v. Sessions*, 860 F.3d 58, 65 (2d Cir. 2017) (state controlled substance statute that "incorporates state schedules to clarify which substances are 'controlled,'" and which "does not suggest that a jury must agree on the particular substance sold," permits conviction even "[i]f some jurors believed that a defendant had sold cocaine, and others believed that he had sold heroin").

Our analysis in *United States v. Elder*, 900 F.3d 491 (7th Cir. 2018), regarding the divisibility of a similar statute, is instructive. In *Elder* we considered a conviction under an Arizona statute that prohibited a person from knowingly "possess[ing] equipment or chemicals, or both, for the purpose of manufacturing a dangerous drug." *Id.* at 494. The issue was whether that conviction could serve as a predicate offense for a later sentencing enhancement. The state statute was categorically broader than the relevant federal drug offense, so it could not serve as a predicate offense unless the statute were divisible. *Id.* at 501–02. To decide that, we observed that the statute "criminalize[d] conduct related to 'dangerous drug[s]' as a broad category, rather than any specific drugs," and that the term "dangerous drug" was defined in a separate part of the statute, which listed various substances by category of drug. *Id.* at 495. We concluded: "The structural separation of the term 'dangerous drug' from its definition makes its

indivisibility clear," and although a prosecutor would have to prove the existence of *a* "dangerous drug" as an element of a conviction, the prosecutor would not have to do so for "the type of dangerous drug." *Id.* at 503.

The government contends, however, that there is a clear textual signal that § 402(c) is divisible. The preamble to all of 720 ILCS 570/402 instructs: "A violation of this Act with respect to each of the controlled substances listed herein constitutes a single and separate violation of this Act." Only § 402(a) and § 402(d), however, actually have "controlled substances listed herein." That sentence in the preamble therefore does not signal that in a prosecution under § 402(c), Illinois prosecutors must prove beyond a reasonable doubt the identity of a controlled substance. The text and structure of § 402(c) do not show that it is divisible among different controlled substances.

### 2. *State Court Decisions and Pattern Jury Instructions*

Without a ruling by the Illinois Supreme Court that is directly on point or statutory text that clearly shows that § 402(c) is divisible, the government relies on other sources of state law: a broader look at Illinois case law, including suggestive opinions from the Illinois Supreme Court and Appellate Court, as well as pattern jury instructions.

The Illinois Supreme Court case that comes closest to addressing the elements of § 402(c) is *People v. Hagberg*, 733 N.E.2d 1271 (Ill. 2000). *Hagberg* focused on whether a field test could ever be "sufficient to prove that the substance was a controlled substance." *Id.* at 1273 (holding: it can be). Although there was a factual allegation that the defendant had possessed cocaine, the Illinois Supreme Court's actual

articulation of the elements of a § 402(c) offense stated: "In a controlled substance case, the State must present sufficient evidence that the substance at issue is a controlled substance." *Id.* at 1273–74. Important for the issue we face here, the state court did not refer to the identity of the particular controlled substance as an element.

The few cases that cite *Hagberg* for its statement of § 402(c)'s elements (rather than its ruling on the reliability and admissibility of field tests), generally repeat its non-specific language. See, e.g., *People v. Woods*, 828 N.E.2d 247, 254 (Ill. 2005) (citing *Hagberg*: "It is axiomatic that the State must prove that the material recovered from the defendant and which forms the basis of the charge is, in fact, a controlled substance."); *People v. Adair*, 940 N.E.2d 292, 297 (Ill. App. 2010) (citing *Hagberg*: "To convict on the charge of unlawful possession of a controlled substance, the State must prove beyond a reasonable doubt that the substance recovered contains a controlled substance."), abrogated on other grounds by *People v. Marshall*, 950 N.E.2d 668 (Ill. 2011). *Hagberg* therefore does not help the government here. To the extent *Hagberg* offers any guidance, its use of the general phrase "a controlled substance" signals that the identity of the controlled substance is *not* an element under § 402(c).

The government also cites an Illinois Supreme Court case concerning a felon's possession of a weapon, *People v. Carter*, 821 N.E.2d 233, 235 (Ill. 2004), which held: "in the absence of a specific statutory provision to the contrary, and under the particular facts of this case, the simultaneous possession of multiple firearms and firearm ammunition by defendant constituted a single offense." The defendant in *Carter* analogized his weapons charges to drug-possession charges in an earlier

Illinois case, *People v. Manning*, 374 N.E.2d 200 (Ill. 1978). *Carter*, 821 N.E.2d at 236. *Manning* had applied the rule of lenity to charges of possession of controlled substances under § 402(a), *not* the provision under which Najera-Rodriguez was convicted. *Manning*, 374 N.E. 2d at 201. In dicta, *Carter* recounted how the Illinois legislature had responded to the *Manning* reading of § 402(a) by adding the sentence to § 402's preamble discussed above, which instructs that possession of "each of the controlled substances listed herein constitutes a single and separate violation." *Carter*, 821 N.E.2d at 238. In other words, *Carter* adds nothing independent to the language in the preamble, but weakens the government's position by pointing out that the statutory amendment was aimed at the Illinois Supreme Court's reading of § 402(a)—i.e., not the statutory section under which Najera-Rodriguez was convicted.

The government cites several intermediate appellate decisions that also do not address head-on the elements of § 402(c). For example, in determining "whether the armed violence statute authorizes separate offenses to be charged based on simultaneous predicate felonies," the court offered as an aside "that the possession of a controlled substance statute permits multiple convictions for the simultaneous possession of multiple substances." *People v. White*, 46 N.E.3d 889, 900–01 (Ill. App. 2015), citing *Carter*, discussed above. As noted, *Carter* is not solid authority for such a proposition as to § 402(c), nor did it matter for *White* because the ability to bring separate charges for different substances under § 402(c) had no effect on the outcome of the case. The general reference in *White* to "a controlled substance statute" does not touch on the critical differences between § 402(a), which is clearly divisible, and § 402(c), which is not clearly divisible.

Likewise, in *People v. Ortiz*, 731 N.E.2d 937, 939 (Ill. App. 2000), the court vacated one of the defendant's two convictions for possession of controlled substances under § 402(c) as "a violation of the one-act-one-crime rule." The court acknowledged that the language in the preamble (discussed above) added to § 402 after Ortiz's conviction might lead to a different outcome. *Id.* at 942. That issue was not before the court, though, so the comment certainly was not a holding on the question, and it was a decision of an intermediate court. The same can be said for *People v. Black*, 953 N.E.2d 958, 960 (Ill. App. 2011), a decision reversing a defendant's convictions for possession and delivery of controlled substances. The defendant in *Black* was charged with several counts of possession of controlled substances, but the opinion focused on the fact that the defendant was deprived of counsel at his pretrial hearing—a "critical stage" of the prosecution—which leads us to suspect that not all available legal challenges had been made on his behalf. See *id.* at 960–66. *Black* does not provide a "definitive" statement on § 402(c)'s elements.[2]

---

[2] Even further afield, the government cites cases that:

(1) Involve convictions not under § 402(c), but under § 402(a), see, e.g., *People v. Besz*, 802 N.E.2d 841, 844 (Ill. App. 2003); *People v. Bui*, 885 N.E.2d 506, 511 (Ill. App. 2008), or some other Illinois statute, see, e.g., *People v. Glisson*, 835 N.E.2d 162, 165 (Ill. App. 2005) (chemical breakdown of illicit controlled substances under 720 ILCS 570/401.5(a-5));

(2) Merely mention the substance at issue, which the government urges us to interpret as an authoritative statement of § 402(c)'s elements, see, e.g., *People v. Bartee*, 814 N.E.2d 238, 242 (Ill. App. 2004) (referencing cocaine, but citing *Hagberg* when stating § 402(c)'s elements in general terms: "The State must prove in a possession of a controlled substance prosecution that the substance at issue is in fact a controlled substance"); or

Without textual support or a clear decision by the Illinois Supreme Court treating the identity of the controlled substance as an element of a § 402(c) charge, hunting through the dicta of state court decisions is a method not supported by Supreme Court precedent. This advocacy-oriented reading of state case law also thwarts the ability of "aliens to anticipate the immigration consequences of guilty pleas in criminal court, and to enter 'safe harbor' guilty pleas that do not expose the alien defendant to the risk of immigration sanctions." *Mellouli*, 135 S. Ct. at 1987 (cleaned up).

The government also argues that we should consider Illinois's relevant pattern jury instructions. Those instructions are at best ambiguous and, if anything, offer some support for Najera-Rodriguez's position that the identity of the particular controlled substance is not an element under § 402(c). There are two relevant pattern jury instructions for all offenses charged under § 402, including § 402(a), for which the identity and amount of the controlled substance appear to be elements. The government relies on Pattern Jury Instruction 17.28, which provides alternative instructions on this element, both of which indicate a space where the identity of the

---

(3) Reflect one or more of the above weaknesses *and* are not precedential, see, e.g., *People v. Bramley*, 2015 WL 9590308, at *9 (Ill. App. Dec. 30, 2015) (using a general formulation for § 402(c)'s elements: "[t]o commit [a § 402(c)] offense … defendant had to 'knowingly' possess a controlled substance"; quoting from plea colloquy: "do you plead guilty, sir, to the offense of unlawful possession of a controlled substance, a class 4 felony?"; quoting further from the plea colloquy that mentioned the substance at issue, but emphasizing the element of "knowing": "it is alleged that … you did *knowingly* and unlawfully possess less than 15 grams of a substance containing cocaine, a controlled substance.") (emphasis in original).

controlled or counterfeit substance should be inserted: "That the defendant knowingly possessed a substance containing *[(_____, a controlled substance) (a counterfeit substance)]*" or "That the defendant knowingly possessed a substance containing *[(_____, a controlled substance) (a counterfeit substance)]*." Section 17 at 51, Illinois Pattern Jury Instructions–Criminal, Supreme Court Committee on Jury Instructions in Criminal Cases. The government does not address, however, Pattern Jury Instruction 17.27, which says: "A person commits the offense of possession of a *[(controlled) (counterfeit)]* substance when he knowingly possesses a substance containing a *[(controlled) (counterfeit)]* substance," giving no indication that the identity of the substance is necessary. *Id.* at 49. The most natural reading of the two instructions is that for § 402 offenses for which the identity of the substance is a necessary element—e.g., § 402(a) and § 402(d)—use of Instruction 17.28 is appropriate; for the catch-all provision, § 402(c), however, Instruction 17.27 will suffice.

Neither Illinois court decisions nor the pattern jury instructions persuade us that the identity of the particular controlled substance is an element for a charge under § 402(c). *Mathis* directs us to look for a "state court decision that definitively answers the question," 136 S. Ct. at 2256, not to construct our own patchwork theory of state statutory elements through a pastiche of dicta in cases that do not address the issue directly.

### 3.  *Records of Conviction*

Because the most reliable sources of state law do not provide a clear sign of divisibility, we are permitted to look at "the record of a prior conviction itself" to determine whether the state statute is divisible. *Mathis*, 136 S. Ct. at 2256. For these

purposes, such documents must be used with care because charging documents often include factual details that are not elements but provide the particulars of the accusation.[3]

Najera-Rodriguez was charged with "UNLAWFUL POSSESSION OF A CONTROLLED SUBSTANCE, in that [he] knowingly and unlawfully had in his possession pills containing in them or having upon them a substance containing alprazolam, also known as Xanax, a controlled substance, in violation of 720 ILCS 570/402(c)." This document does not show whether the mention of alprazolam/Xanax is an essential element or a factual detail. See *Descamps*, 570 U.S. at 292 (Alito, J. dissenting) ("Charging documents must generally include factual allegations that go beyond the bare elements of the crime—specifically, at least enough detail to permit the defendant to mount a defense."); see also, e.g., *Edwards*, 836 F.3d at 837 (noting that charging documents not only "must allege every element of the crime charged, but they may also (and usually do) include additional facts that need not be proved to the jury beyond a reasonable doubt"); *Harbin*, 860 F.3d at 66 (explaining that "the values of fair notice and avoidance of double jeopardy often demand that the government specify accusations in ways unrelated to a crime's elements," and giving as example the fact that a murder charge will often specify the identity of an alleged victim, which "does not

---

[3] The parties disagree as to whether we can address this source of state law. The Board of Immigration Appeals declined to do so. Whether the Illinois state criminal statute is divisible is a purely legal question, so we may complete the legal analysis set out by *Mathis* even if the Board did not do so. *Lopez v. Lynch*, 810 F.3d 484, 488 (7th Cir. 2016) ("Since we review de novo whether an alien was convicted of an aggravated felony, it is irrelevant to our analysis that the BIA's opinion addressed the issue without definitively ruling on the matter.").

mean, however, that 'murder of John Smith' has a distinct 'John Smith' element").

Our reluctance to place too much weight on Najera-Rodriguez's charging document grows in light of his sentencing document, which states only that the sentence is the result of a "negotiated plea of guilty" for "unlawful poss. [of a] cont. substance" under § 402(c), without specifying the controlled substance. Together, the charging and sentencing documents in Najera-Rodriguez's case simply do not show that the identity of the controlled substance was an element of the offense, which would be necessary to treat § 402(c) as divisible, so that his conviction could support his removability under 8 U.S.C. § 1227(a)(2)(B)(i).

If Najera-Rodriguez had "known that the Board would consider this statute of conviction categorically" to involve a federal controlled substance, "he may have gone to trial, or he may have pleaded guilty to a different statutory violation calling for additional incarceration but less serious immigration consequences." *Garcia-Martinez v. Barr*, 921 F.3d 674, 683 (7th Cir. 2019), citing *Mellouli*, 135 S. Ct. at 1987 (explaining prevalence of "safe harbor" guilty pleas that permit defendants to avoid immigration consequences). The state law sources, let alone the record materials, do not "speak plainly," so we are not "able to satisfy '*Taylor's* demand for certainty.'" See *Mathis*, 136 S. Ct. at 2257, quoting *Shepard v. United States*, 544 U.S. 13, 21 (2005), citing in turn *Taylor v. United States*, 495 U.S. 575, 602 (1990) (adopting categorical method for applying Armed Career Criminal Act).

Finally, we add a note of caution. In applying this now-extensive body of law concerning collateral federal consequences of state convictions, lawyers for the federal

government often urge federal courts to define the elements of state criminal offenses in particular ways essential or helpful in the particular case. If federal courts interpret state law incorrectly, by finding that state laws include essential elements that state courts have not treated as such, we could mistakenly cast doubt on the much higher volume of state criminal prosecutions under those same state statutes. To reduce that risk, we need to insist on clear signals—signals that convince us to a certainty that the elements are correct and support divisibility before imposing additional federal consequences for those state convictions.

We GRANT the petition for review, VACATE the order of removal, and REMAND this case to the Board of Immigration Appeals for further proceedings consistent with this opinion.